GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
E. M. CORNELL ET AL.

Decided June 28, 1902.

**1.—Negligence—Violation of Rule by Servant.**

It is not negligence per se for an employe to violate the rules of the employer, or to consent to use, or not to use diligence to prevent, such a violation by others.

**2.—Same—Harmless Error—Charge.**

Where a charge was given which treated the rules of the defendant company as binding on all parties, this cured any error that may have been committed in admitting testimony tending to show that the rules had not been enforced.

**3.—Evidence—Res Gestae—Harmless Error.**

Error in excluding declarations offered as res gestae is harmless where the declarants themselves testified as witnesses to the same effect.

Appeal from Cooke. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.

*H. G. Bush* and *Stuart & Bell,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—J. H. Cornell, a locomotive fireman in the service of appellant, was killed in a collision of freight trains at Windsor Switch, three or four miles north of Gainesville, Texas, January 10, 1901, about 4:48 a. m., while it was yet dark. The two trains involved in the collision had just left Gainesville that morning about thirty minutes apart, destined for places north of Windsor Switch, but under orders to take the siding at Windsor, on account of the south-bound passenger train due to pass there at 5:08. The train leaving Gainesville first, referred to in the record as the O'Brien train, and consisting of several cars, broke in two just as it passed through the switch to take the siding at Windsor, leaving the caboose where it lacked five or six inches of clearing the main track. With the rear end of this

train thus standing out of the clear the following train, on which Cornell was fireman, consisting of an engine and caboose, while running about eighteen or twenty miles an hour, collided, with the fatal result above stated, on account of which the widow and children recovered a verdict and judgment for $7500, from which this appeal is prosecuted.

Of the grounds of recovery alleged, the evidence tended to show and warranted the jury in finding: first, that the operatives in charge of the O'Brien train were guilty of negligence after the train broke in two in not sending back a flagman and in not placing torpedoes on the track, as required in case of an accident by the rules of the company, and that this was one proximate cause of the death of Cornell; second, that M. E. Shearer, the engineer of the following train, under whom Cornell was fireman, was guilty of negligence in attempting, under the circumstances surrounding him and at a speed of eighteen to twenty miles per hour, to run to the north end of Windsor Switch and back in, instead of heading in behind the O'Brien train, with his train under control, as required by the rules, and instead of heeding the warning given him by the red lights displayed on the O'Brien train as danger signals, as required by the rules of the company, and that this negligence was also a proximate cause of Cornell's death. The evidence conclusively established that Shearer saw the red lights, one in the cupola and one on the left side of the caboose, about one mile from the switch, his excuse for disregarding these danger signals, which indicated that the O'Brien train was still on the main track, being that the rule requiring green lights to be substituted for red ones as soon as the track is clear when a train turns out to meet or be passed by another train was not lived up to by the employes. He testified, however, that in approaching Windsor Switch he blew a long whistle at the mile post and that no reply was made to it by the O'Brien train, and also that he did not discover that the O'Brien train was not, but believed it to be, in the clear until it was too late to prevent the collision. The other grounds of negligence alleged were clearly not proximate causes of the accident and were not submitted to the jury, which eliminates as harmless the errors assigned to the rulings on demurrer.

On the defense of contributory negligence, the evidence tended to show that Cornell, as well as Shearer, was guilty of negligence in the attempt to run past the O'Brien train. Shearer testified that when he whistled for the switch at the mile post he told Cornell that they would run to the north end of the switch and back in, thus getting ahead of the other train, as they had intended to do when they left Gainesville, and that Cornell said "all right." As the red lights on the O'Brien train were then seen by Shearer and as Cornell was in as good if not better position to see them as Shearer, there would seem to be no escape from the conclusion that Cornell was himself as culpable as Shearer but for the fact that the evidence further tended to show that by reason of Cornell's having just been engaged at the mile post and before reaching it in firing the engine, his vision was so far affected by looking into the

fire as to render him incapable for the moment and for a little while afterwards of distinguishing red from green. This circumstance, however, warranted the inference that a person of ordinary prudence situated as he was might reasonably have concluded that the engineer, in proposing to pass the O'Brien train as he did, saw that green lights had taken the place of red ones and that the way was clear, thus leaving the question a debatable one before the jury whether Cornell was guilty of contributory negligence in consenting to this departure from the rules and methods adopted by appellant for the running of its trains. He, as well as Shearer, must have been ignorant of what had befallen the O'Brien train, and if he had become so blinded for the time being as not to be able to see its red lights or to otherwise discover that it was not quite in the clear, as but for the accident happening to it would have been, the defense of contributory negligence was certainly not conclusively established. If the situation in which Cornell was placed was such as the evidence warranted the jury in finding it might have been at the time he consented to pass the O'Brien train, he had no reason to suspect danger from the course pursued. The situation of Shearer was different, for admittedly he saw danger signals, and the evidence warranted, if it did not require, a finding that he should have heeded them, although he may have concluded under the circumstances, and doubtless did, that the O'Brien train was entirely, instead of not quite, in the clear. It was also a question for the jury, admitting of a finding in favor of appellees, whether Cornell was guilty of contributory negligence in not keeping a proper lookout and in not discovering that the O'Brien train was in the way, it being on his side of the engine.

The main contention of appellant in the trial court was, and in this court is, that it was negligence per se for Cornell himself to violate the rules of the company, or to consent to, or not to use diligence to prevent the violation thereof by others. That this is not the law in Texas is now too well settled to admit of discussion. Railway v. Adams, 1 Texas Ct. Rep., 17, 58 S. W. Rep., 831; Railway v. Connell, 3 Texas Ct. Rep., 933, 66 S. W. Rep., 246, and cases there cited. The court did not err, therefore, in refusing to give the numerous special instructions requested by appellant and quoted in its brief, since the vice of this contention was common to them all, except the fourth, which was more than covered by the sixth paragraph of the charge given.

We sustain appellee's objection, to say nothing of others that suggest themselves to so much of the sixteenth and seventeenth assignments of error as complain of the court's refusal to give the eighth and ninth special instructions therein merely referred to without being set out, and treat these assignments as embodying only the proposition that the seventh special instruction, which is the only one referred to in the statement under these assignments, should have been given in view of the general terms employed in the sixth paragraph of the charge submitting the issues of contributory negligence. So treated the assign-

ments are overruled because of the vice already noticed as common to refused instructions.

Errors have also been assigned to the charges given by the court, but none of the propositions submitted under these assignments are maintainable.

The rulings complained of in the admission and exclusion of testimony must be approved, or at least treated as harmless, for if there was error, as assigned, in admitting testimony tending to show that the rules of the company read in evidence had not been enforced, it was cured when the court in the charge treated them as binding on all parties; and if there was error, as assigned, in excluding declarations of the O'Brien train crew offered by appellant as res gestae to show that they did not expect the following train to attempt to pass them, appellant received the full benefit of this testimony when the declarants themselves testified as witnesses on the trial.

Appellants could not have been injured by the apportionment of the damages complained of.

These conclusions lead to an affirmance of the judgment.

*Affirmed.*